## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| EDWARD A. SMITH, | ) | CASE NO. 1:18-cv-01041 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| WARDEN LaSHANN EPPINGER, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Edward A. Smith ("Smith" or "Petitioner") brings this habeas corpus action

pursuant to 28 U.S.C. § 2254.  Doc. 1.  His federal habeas petition is deemed filed on April 29,

2018, the date he placed it in the prison mailing system.[1]  Doc. 1, p. 12 (hereinafter referred to as

"Petition").  Smith's habeas petition relates to his conviction and sentence rendered in Cuyahoga

County Common Pleas Court Case No. CR-88-226041, *State of Ohio v. Edward A. Smith*.  Doc.

1; Doc. 11-1, p. 10.  In July 1988, after Smith pleaded guilty to aggravated murder, the trial court

sentenced him to 20 years to life in prison.[2]  Doc. 11-1, p. 436.

This matter has been referred to the undersigned Magistrate Judge for a Report and

Recommendation pursuant to Local Rule 72.2.  On October 5, 2018, Respondent filed an

Answer/Return of Writ.  Doc. 11.  Smith filed a Traverse on December 26, 2018.  Doc. 13.  For

the reasons set forth herein, the undersigned recommends that the Court DISMISS and/or DENY

Smith's Petition.

---

[1] "Under the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts." *Cook v. Stegall,* 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack,* 487 U.S. 266, 273 (1988)).  Smith's Petition was docketed in this Court on May 4, 2018.  Doc. 1.

[2] The trial court ordered Smith's sentence to run concurrently with other sentences that Smith had pending at the time.  Doc. 11-1, p. 436.

# I. Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).

On March 30, 2017, the Eighth District Court of Appeals affirmed the trial court's denial of Smith's motion to withdraw guilty plea.  Doc. 11-1, pp. 434-444.  In that decision, the court of appeals stated the following regarding the facts underlying Smith's conviction and sentence:

> {¶ 2} In November 1985, Smith fatally stabbed the victim, while burglarizing the victim's home. Smith was 17 years of age at the time . . .

*State v. Smith*, 2017 WL 1179934, * 1 (Ohio App. Ct. Mar. 30, 2017); Doc. 11-1, p. 436.

# II. Procedural Background

## A.  State court conviction

On April 7, 1988, a Cuyahoga County, Ohio grand jury indicted Smith for aggravated murder, with a felony murder specification and aggravated felony specifications; aggravated burglary; and theft.  Doc. 11-1, pp. 9-10, 139.  In July 1988, after a jury was empaneled, Smith appeared with counsel in court and withdrew a prior not guilty plea and pleaded guilty to an amended count one – aggravated murder with aggravated felony specifications -- and the other counts were dismissed.   Doc. 11-1, pp. 10, 139.  The trial court sentenced Smith to 20 years to life in prison, with the sentence to run concurrent with sentences imposed in other cases.[3]  Doc. 11-1, pp. 10, 139.  Smith did not file an appeal.

## B.  Delayed appeal to the Ohio court of appeals

---

[3] The sentences imposed in the other cases are not challenged herein.

On March 1, 1999, Smith, proceeding pro se, filed a notice of appeal (Doc. 11-1, pp. 11-12); a motion for leave to file delayed appeal (Doc. 11-1, pp. 13-15); and a motion to appoint counsel (Doc. 11-1, pp. 16-17) in the Eighth District Court of Appeals.  As grounds for his request to file a delayed appeal, Smith stated that he was not advised of his right to appeal or right to counsel on appeal and state employees informed him that because he had pleaded guilty the appeal process was closed to him.  Doc. 11-1, p. 15.  On March 31, 1999, the Ohio court of appeals denied Smith's motion for leave to file delayed appeal.  Doc. 11-1, p. 20.  Smith did not file an appeal with the Ohio Supreme Court.

### C.  2013 motions to void sentence

#### July 2013 motion

On July 22, 2013, Smith acting pro se filed with the trial court a motion to void his sentence under Civ.R. 60(B).  Doc. 11-1, pp. 21-24.  The state opposed the motion (Doc. 11-1, pp. 25-28) and Smith filed an opposition or, in the alternative, a request for reconsideration if the motion had already been ruled on (Doc. 11-1, pp. 29-34).  On August 20, 2013, the trial court denied Smith's motion to void sentence.  Doc. 11-1, p. 35.

On September 23, 2013, Smith acting pro se filed a notice of appeal with the court of appeals.  Doc. 11-1, pp. 36-51.  On October 2, 2013, the court of appeals sua sponte dismissed Smith's appeal as untimely.[4]  Doc. 11-1, pp. 52-53.  On October 21, 2013, Smith filed a suspensive appeal with the court of appeals, arguing the court should not have dismissed his appeal as untimely and requesting that the court allow his appeal to proceed.  Doc. 11-1, pp. 73-75.  On October 23, 2013, the court of appeals denied Smith's suspensive appeal.  Doc. 11-1, p. 76.  Smith did not file an appeal with the Supreme Court of Ohio.

---

[4] Following the court of appeals' dismissal of Smith's appeal as untimely, on October 10, 2013, Smith filed an appellate brief.  Doc. 11-1, pp. 54-72.

3

*November 2013 motion*

On November 12, 2013, Smith acting pro se filed a second motion with the trial court seeking to void his judgment under Civ.R. 60(B).  Doc. 11-1, pp. 77-82.  The state opposed the motion.  Doc. 11-1, pp. 83-89.  On December 4, 2013, the trial court denied Smith's motion to void judgment.[5]  Doc. 11-1, p. 90.  On December 20, 2013, Smith filed a notice of appeal from the trial court's judgment.  Doc. 11-1, pp. 91-99.  Smith filed his appellate brief in February 2014.  Tr. 100-118.  In his brief, Smith presented the following assignments of error:

1.  The trial court abused its discretion by failing to impanel 3 judges as law requires.

2.  The trial counsel was ineffective for failing to argue the age of Defendant.

3.  The trial court lacked jurisdiction to hear the case sub judice.

4.  The sentence given to Appellant was illegal and void.

5.  The trial court erred by using the doctrine of res judicata.

6.  The trial court via the prosecutor allowed the state to recast Appellant's 60(B) as a post conviction.

Doc.  11-1, pp. 108-117.  The state filed a brief in opposition.  Doc. 11-1, pp. 119-132.  Smith filed a reply brief.  Doc. 11-1, pp. 133-135.  On July 10, 2014, the state court of appeals dismissed Smith's appeal, indicating that Smith had failed to timely appeal from the trial court's original denial of his motion to void judgment.  Doc. 11-1, pp. 136-144.  On July 21, 2014, Smith filed a motion for reconsideration.  Doc. 11-1, pp. 145-148.  The state filed an opposition brief.  Doc. 11-1, pp. 149-154.  On August 19, 2014, the court of appeals denied Smith's motion for reconsideration.  Doc. 11-1, p. 155.  Smith filed a notice of appeal and memorandum in support of jurisdiction with the Supreme Court of Ohio on August 13, 2014.  Doc. 11-1, pp. 156-

---

[5] The judgment entry was heard on December 3, 2013, and signed and journalized on December 4, 2013. Doc. 11-1, p. 90.

174.  In his memorandum in support of jurisdiction, Smith presented the following propositions

of law:

1.    The dismissal of all underlying felonies upon which a charge of aggravated
      murder under O.R.C. § 2903.01 is predicated deprives the court of subject matter
      jurisdiction to convict on aggravated murder absent the "prior calculation and
      design" element.

2.    The failure of trial counsel to raise the minority of a defendant as a bar to a
      common pleas court's subject matter jurisdiction renders such counsel ineffective
      within the meaning of the Sixth Amendment.

3.    The dismissal of a timely appeal from a final, appealable order, based upon the
      perception that it contained the same claims as in a previous pleading in the lower
      court, is both contrary to the mandates of Ohio Revised Code §2505.02, et. seq.
      and violative of due process of law.

Doc.  11-1, pp. 162-165.  The state filed a waiver of memorandum in response.  Doc. 11-1, p.

175.  On November 19, 2014, the Supreme Court of Ohio declined to accept jurisdiction.  Doc.

11-1, p. 176.

### D.  2002-2014 parole activity

On March 5, 2002, when Smith was first eligible for parole, Smith came before the Ohio

Parole Board.  Doc. 11-1, pp. 177-178, 184.  The parole board recommended that Smith's

incarceration be continued with further review to occur in March 2012.  Doc. 11-1, pp. 178-179.

Prior to the March 2012 scheduled review, a rehearing was ordered to occur in November 2005

in light of an Ankrom ruling.[6]  Doc. 11-1, pp. 180-181.  When Smith's case was reheard in

November 2005, his incarceration was continued with further review to occur in March 2012.

Doc. 11-1, p. 183.  The parole board next heard Smith's case on January 18, 2012.  Doc. 11-1,

---

[6] In *Ankrom v. Hageman*, 2005 WL 737833 (Ohio App. Ct. Mar. 31, 2005), the Ohio Tenth Circuit Court of Appeals
entered a ruling in favor of a class of inmates who challenged the Adult Parole Authority's procedures for
determining release dates.

pp. 183-185.  The parole board found by a majority vote that Smith was not suitable for release. Doc. 11-1, pp. 183-185.  The parole board continued Smith to January 2, 2015.  Doc. 11-1, p. 184.

Following its receipt of a notice from the Ohio Adult Parole Authority regarding offenders coming before the parole board, on August 27, 2014, the trial court issued a journal entry, stating in part "The court imposed sentence after due consideration of all relevant factors and opposes any reduction or modification of sentence by the Ohio Parole Board from that which was imposed." Doc. 11-1, p. 186.  On September 26, 2014, Smith filed an appeal in the Eighth District Court of Appeals from the August 27, 2014, journal entry.  Doc. 11-1, pp. 187-197.  In connection with his appeal, on October 15, 2014, Smith filed a motion for appointment of counsel, arguing that the August 27, 2014, journal entry was a sua sponte modification of his sentence to a sentence of life without parole and as a direct appeal he was entitled to appointment of counsel.  Doc. 11-1, pp. 198-200.  On October 29, 2014, the court of appeals denied Smith's motion for appointment of counsel.  Doc. 11-1, p. 201.  Also, on October 29, 2014, the court of appeals sua sponte dismissed Smith's appeal, indicating that there was no judgment by the trial court from which Smith could appeal.  Doc. 11-1, pp. 202-203.  Smith did not appeal to the Supreme Court of Ohio.

Smith had a parole hearing on January 29, 2015.  Doc. 11-1, pp. 204-206.  The parole board continued Smith for another 24 months until January 2, 2017.  Doc. 11-1, p. 205.  The parole board provided the following rationale for its decision:

> Offender is serving for a series of very serious offenses that include murder, felonies assault and robbery. Offender has participated in risk relevant programs. However, he has received multiple tickets since his hearing which indicate a lack of impulse control. Given these facts, he is not suitable for release.

Doc. 11-1, p. 205.

### E.  Motion to withdraw guilty plea

On June 19, 2015, Smith filed with the trial court a motion to withdraw his guilty plea (Doc. 11-1, pp. 207-224), motion for evidentiary hearing (Doc. 11-1, pp. 225-226), and a motion for appointment of counsel (Doc. 11-1, pp. 227-228).   Smith argued that "[t]he plea agreement carried with it the tacit understanding that, barring bad behavior, Defendant had a reasonable expectation of actual consideration for release on parole in his hearing on 02/21/2002, fourteen years hence."  Doc. 11-1, p. 210.  He further argued that it was not explained to him "that the Ohio Adult Parole Authority (OAPA) had the authority to change the manner in which prisoners are considered for parole[] . . . [or] that, in this particular case, the trial court would improperly retroactively apply a statutory revision effective July 1, 1996 to alter its position on his parole eligibility[.]"  Doc. 11-1, p. 210.  Smith also argued that the trial court's issuance of journal entries on August 27, 2014, wherein it was stated, in response to the parole authority's notice, that the court opposed any reduction or modification of sentence by the parole board, altered the terms of the plea agreement and constituted a breach of the plea agreement.  Doc. 11-1, p. 212. He contended that the journal entries removed realistic parole eligibility and altered his sentence from parole eligibility in 14 years to an effective term of life without parole.  Doc. 11-1, p. 212. The state opposed Smith's motion to withdraw his guilty plea.  Doc. 11-1, pp.  229-238.  Smith filed a reply.  Doc. 11-1, pp. 239-247.

The trial court appointed counsel for Smith and on September 28, 2015, Smith, through counsel, filed a motion to reveal notes of prosecutor regarding plea agreement.  Doc. 11-1, pp. 248-252.  In the motion, Smith indicated that his trial counsel and the original trial judge were

deceased and there was no transcript of the proceedings.[7]  Doc. 11-1, p. 249; Doc. 11-2, pp. 5-6.
Smith's court appointed counsel also filed supplemental law and argument in support of Smith's
motion to withdraw guilty plea.  Doc. 11-1, pp. 253-287.  On October 28, 2015, the state filed a
brief in opposition to Smith's motion to withdraw guilty plea.  Doc. 11-1, pp. 288-312.  Smith,
through counsel, filed a reply (Doc. 11-1, pp. 313-323) and the state filed a supplemental brief in
opposition to Smith's motion to withdraw guilty plea (Doc. 11-1, pp. 324-339).

On February 23, 2016, the trial court held a hearing on Smith's motion to withdraw guilty
plea.  Doc. 11-1, p. 340; Doc. 11-2 (February 23, 2016, hearing transcript).  During the hearing,
Smith did not call any witnesses.  Doc. 11-2.  The state called Attorney David Briggs who was
the assistant prosecutor on Smith's case.  Doc. 11-2, pp. 14-21.  Attorney Briggs had no
independent recollection of Smith's case but indicated that, having reviewed the file, he did not
see notes reflecting an agreement not to oppose parole.  Doc. 11-2, pp. 17, 19.  Attorney Briggs
indicated that, had such an agreement been made, he would not have had the authority to make
such an agreement; he would have been required to seek approval from a supervisor; and had
approval been obtained he would have noted it in the file.  Doc. 11-2, pp. 18-19.  Attorney
Briggs indicated that not opposing parole was not something that, in his mind, was ordinarily
done in practice.  Doc. 11-2, p. 19.  On February 26, 2016, the trial court denied Smith's motion
to withdraw his plea.  Doc. 11-1, p. 340.

On March 21, 2016, Smith acting pro se filed a notice of appeal with the Eighth District
Court of Appeals.  Doc. 11-1, pp. 341-346.  Smith subsequently filed a motion for appointment
of counsel that the court of appeals granted.  Doc. 11-1, pp. 496, 636.  On July 7, 2016, Smith,

---

[7] Attached to the motion was an affidavit from the chief court reporter indicating that there were no court
reporting notes for Case No. CR-88-226041.  Doc. 11-1, p. 251.

through court appointed counsel, filed an appellate brief raising the following assignment of error:

>  1.  The trial court committed error when, faced with a manifest injustice caused by its own breach of a plea agreement, it denied appellant's motion to withdraw his guilty plea.

Doc. 11-1, p. 351.  In August 2016, Smith filed a pro se motion for appointment of substitute counsel, arguing that his counsel did not raise issues that should have been raised, namely that the trial court abused its discretion in denying his motion to withdraw guilty plea.  Doc. 11-1, pp. 359-360, 636.  On August 18, 2016, the court of appeals denied Smith's motion for appointment of substitute counsel.  Doc. 11-1, p. 361.  In its order denying Smith's motion, the court granted Smith leave to file a pro se brief addressing "the issue of whether 'the trial court abused its discretion denying appellant's motion to withdraw guilty plea.'"  Doc. 11-1, p. 361.  On October 17, 2016, Smith filed his pro se supplemental brief (Doc. 11-1, pp. 362-377) raising the following five assignments of error:

>  1.  The successor judge abused her discretion by issuing Court Order without reviewing or even possessing the facts of the case in which the successor judge issued an additional order of judgment.
>
>  2.  The successor judge lacked jurisdiction to issue "facts of the case and recommendations" to the parole authority and the issuance of court orders was an abuse of discretion and a sham legal process.
>
>  3.  The successor judge abused her discretion when two attorneys were not appointed to an indigent defendant when the record was clear that the defendant was in fact charged with Aggravated Murder with specifications and underlying felonies with specifications.
>
>  4.  The successor Judge's issuance of a Court Order was additional to the Criminal Rule 11 explanatory plea agreement, and facts presented were not construed in the light most favorable to the defendant.
>
>  5.  The additional Judgment increased the penalty at the Authority who provided eligibility for parole, to a unique sentence of life without parole eligibility, in

violation of Eighth and Fourteenth Amendments that protect against cruel and unusual punishment.

Doc. 11-1, p. 365.  The state filed briefs in opposition.  Doc. 11-1, pp. 378-395, 396-417.  Smith filed a pro se reply brief.  Doc. 11-1, pp. 418-433.  On March 30, 2017, the court of appeals affirmed the trial court's denial of Smith's post-conviction motion to withdraw guilty plea.  Doc. 11-1, pp. 434-444.

On April 10, 2017, Smith filed a motion for reconsideration and/or request for an en banc hearing.  Doc. 11-1, pp. 445-447.  The court of appeals denied Smith's motion for en banc hearing and motion for reconsideration.  Doc. 11-1, pp. 448, 449.  On May 15, 2017, Smith filed a notice of appeal and memorandum in support of jurisdiction with the Supreme Court of Ohio.  Doc. 11-1, pp. 450-482.  In his memorandum in support of jurisdiction, Smith raised the following five propositions of law:

1. The provisions of Ohio Revised Code §2967.03 that require "the trial judge...of the court trial in which a person was convicted" to furnish, "at the request of the authority, a summarized statement of the facts proved at trial, and of all other facts having reference to the propriety of..." granting a parole, together with a recommendation, do not encompass the issuance of a Court Order prohibiting a parole.

2. The provisions of Ohio Revised Code §2967.03 requiring the furnishing of relevant facts of the case to the Parole Authority by the trial judge require a review of such facts prior to the issuance of the "summarized statement" and cannot be met absent the existence of a record of the facts.

3. The issuance of a Court Order opposing parole does not conform to the statutory provisions of Ohio Revised Code §2967.03, or any other statutory provision, and serves to breach a plea agreement that included parole eligibility.

4. Ohio Revised Code §5149.101 is expressly not retroactive, pursuant to Ohio Revised Code §5120.021, and cannot be used to issue a court order prohibiting release on parole for a prisoner convicted prior to 1996.

5. The issuance of a court order divesting a prisoner of parole eligibility that was included in a plea agreement, without statutory authority, constitutes a breach of

that plea agreement and renders the initial plea invalid under the Due Process
Clause.

Doc. 11-1, p. 452.  The state filed a waiver of memorandum in response.  Doc. 11-1, p. 484.  On

September 13, 2017, the Supreme Court of Ohio declined jurisdiction of Smith's appeal.  Doc.

11-1, p. 485.

### F.  Application for reopening appeal pursuant to Ohio App. R. 26(B)

On June 20, 2017, Smith acting pro se filed an application for reopening his appeal

pursuant to Ohio App. R. 26(B).  Doc. 11-1, pp. 485-502.  Smith argued that his appellate

counsel was ineffective for not raising the following assignments of error:

1. Appellant was denied due process of law when denied the effective assistance of
   appellate counsel where counsel failed to raise (1) failed to file motion under
   App.R. 26(A) when the court violated App.R. 12(A); (2) violated App.R. 9(C)
   [Statement of Evidence or Proceeding] to'reconstruct the destroyed Crim.R. 11
   record with Appellant's recollection;' (3) failed to seek reconsideration on the
   express violations of the 'separation of powers' and (4) failed to address the
   application that R.C. §2967.021 had to an offender like the Appellant, as was done
   by trial counsel below.

2. Appellant was denied due process of law under the Ohio and United States
   Constitutions when denying Appellant the effective assistance of trial appellate
   counsels for failing to correct the court's misrepresentation of the truthful and
   accurate portrayal of Ohio Revised Code §2967.03 [a strictly 'clemency'
   discretionary statute] because Ohio's pre-7/1/96 "Parole Releasing Regulations'
   (AR's) governs the type of discretion to be used at 'parole eligibility'. App.R.
   26(A) should have been sought by appellate counsel on the misapplication by the
   court of R.C. §2967.03 [clemency] when the matter deals strictly with 'parole
   eligibility', R.C. §2967.13 R.C. § 2967.12(1).

Doc. 11-1, pp. 490-491.  The state filed an opposition brief.  Doc. 11-1, pp. 503-513.  On

November 1, 2017, the Ohio Court of Appeals denied Smith's application for reopening his

appeal, concluding that App.R. 26(B) applies to an appeal of a criminal conviction and sentence

not an appeal pertaining to denial of motion for withdraw of a guilty plea.  Doc. 11-1, pp. 514-

517.

On December 15, 2017, Smith filed a notice of appeal with the Supreme Court of Ohio from the November 1, 2017, decision, and memorandum in support of jurisdiction.  Doc. 11-1, pp. 518-533.  In his memorandum in support of jurisdiction, Smith presented the following two propositions of law:

1.  A motion to withdraw a guilty plea under Ohio Crim.R. 32.1 constitutes a direct attack upon a criminal conviction and a defendant is thus entitled to effective assistance of counsel to perfect an appeal therefrom. Where such counsel is ineffective, App. R. 26(B) is available to seek redress of the issue.

2.  Where appellate counsel in a criminal case fails to raise significant and obvious errors of constitutional magnitude and fails to properly argue the errors that were raised, and the results of the appeal were adversely affected thereby, such errors constitute ineffectiveness within the meaning of the Sixth and Fourteenth Amendments and reversal is warranted.

Doc. 11-1, pp. 525-529.  The state filed a memorandum in response.  Doc. 11-1, pp. 534-542.  On February 28, 2018, the Supreme Court of Ohio declined to accept jurisdiction.  Doc. 11-1, p. 543.

**G.  2016-2017 parole activity**

On August 23, 2016, in response to a notice from the Ohio APA regarding Smith's upcoming parole hearing, the trial court issued an entry, stating "[t]he court imposed sentence after due consideration of all relevant factors and opposes any reduction or modification of sentence by the Ohio Parole Board from that which was imposed."  Doc. 11-1, p. 544.  Smith filed a pro se appeal on September 27, 2016, with the court of appeals from the August 23, 2016, entry.  Doc. 11-1, pp. 545-557.  On October 13, 2016, the state court of appeals sua sponte dismissed the appeal for failure to file a timely notice of appeal.  Doc. 11-1, p. 558.  Smith did not file an appeal with the Supreme Court of Ohio.

Smith had a parole hearing on April 18, 2017.  Doc. 11-1, pp. 559-561.  The parole hearing minutes note that the judge was opposed.  Doc. 11-1, p. 559.  The parole board continued

12

Smith's incarceration through November 1, 2019.  Doc. 11-1, p. 560.  In reaching its decision,

the parole board found that:

> The inmate has an extensive and violent criminal history that includes the senseless
> killing of a vulnerable victim. The inmate's release at this time would demean the
> seriousness of the offenses and create an undue risk to public safety. While the
> inmate's institutional conduct has improved in recent years, his overall adjustment
> in that regard has been marginal during his incarceration. For these reasons, and
> after weighing all relevant factors, the Board finds that he inmate is not presently
> suitable for release.

Doc. 11-1, p. 560.

### H.  2018 motion to void sentence

On February 6, 2018, Smith filed a motion to void sentence, motion for appointment of

counsel and motion for evidentiary hearing.  Doc. 11-1, pp. 562-570, 571, 572, 619.  In his

motion to void sentence, Smith argued:

1.     This court lacked subject-matter jurisdiction when it disregaurded the entire range
       of sentences provided for by statute when it imposed a sentence of twenty (20)
       years to life under R.C. 2903.01.

2.     The trial court exceeded it's authority when it disreguarded the sentencing statute.

Doc. 11-1, pp. 563-564.

The state opposed the motion to void sentence.  Doc. 11-1, pp. 573-578.  On February 9,

2018, the trial court denied Smith's motion to void sentence, motion to appoint counsel and

motion for evidentiary hearing.  Doc. 11-1, pp. 579, 580, 619.

On March 5, 2018, Smith filed a notice of appeal with the state court of appeals from the

trial court's February 9, 2018, denial of his motion to void sentence.  Doc. 11-1, pp. 581-588.

On March 22, 2018, Smith filed his appellate brief (Doc. 11-1, pp. 589-601), raising the

following assignment of error:

> 1. The trial court erred as a matter of law when sentencing defendant-appellant to 20 years to life and abused it's discretion in denying defendant's motion to correct a facially illegal sentence where defendant-appellant's sentence is contrary to law.

Doc. 11-1, pp. 596-600. On March 28, 2018, the state filed its appellate brief. Doc. 11-1, pp. 602-612. On April 10, 2018, Smith filed his reply brief. Doc. 11-1, pp. 613-618. Respondent's recitation of the procedural history reflects that Smith's March 5, 2018, appeal in the Ohio Eighth District Court Appeals (Case No. CA-18-106893) had not yet been decided. Doc. 11, p. 14.

The undersigned notes that neither party has supplemented or sought leave to supplement the record regarding this appeal. In the interest of completeness, however, the undersigned notes that a recent review of the court of appeals' online docket in Case No. CA-18-106893 reflects that, on January 17, 2019, the court of appeals vacated and remanded Smith's sentence for sentencing. *See*

https://cpdocket.cp.cuyahogacounty.us/COA_CaseInformation_Summary.aspx?q=ex6rDb4qbXlhHGoFroiQiA2 (Case No. CA-18-106893) (last visited 4/6/2020);[8] *State v. Smith*, 131 N.E.3d 321 (Ohio App. Ct. 2019). In its decision, the court of appeals concluded that the trial court should have sentenced Smith to "life imprisonment with parole eligibility after serving twenty years of imprisonment" which was not the same as the sentence of "20 years to life in prison." *Smith*, 131 N.E.3d at 323, 327. Thereafter, the Supreme Court of Ohio declined to accept jurisdiction of the State of Ohio's appeal. *See*

https://cpdocket.cp.cuyahogacounty.us/COA_CaseInformation_Summary.aspx?q=ex6rDb4qbXl

---

[8] *See* Fed. R. Evid. 201(b)(2) (allowing a court "to judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." ; *see also e.g., Ashipa v. Warden, Chillicothe Corr. Inst.*, 2009 WL 3152840, *3 (S.D. Ohio Sept. 30, 2009) (taking judicial notice of online docket records available to the public through the internet).

hHGoFroiQiA2 (Case No. CA-18-106893) (last visited 4/6/2020). The matter was remanded to

the trial court and, on June 13, 2019, the trial court entered an order, stating "per opinion of the

8th district court of appeals on count of aggravated murder defendant is sentenced to life in prison

with parole eligibility after 20 years of imprisonment." *See*

https://cpdocket.cp.cuyahogacounty.us/CR_CaseInformation_Docket.aspx?q=MJUSNckj3hLgry

eTnDTrxw2 (Case No. CR-88-226041-A) (last visited 4/6/2020). Smith then filed a notice of

appeal from the June 13, 2019, judgment of sentence. *See*

https://cpdocket.cp.cuyahogacounty.us/COA_CaseInformation_Docket.aspx?q=g7cD6fYKkSU

BOV8h2SOD9Q2 (Case No. CA-19-108727) (last visited 4/6/2020). As of April 6, 2020, the

online docket for the Eighth District Court of Appeals Case No. CA-19-108727 reflects that the

appeal is pending.

## I.   Federal habeas corpus petition

Smith raises the following three grounds for relief in his Petition:

> **GROUND ONE:** Petitioner was deprived of due process of law by the successor judge of the trial court breaching the plea agreement, rendering the plea Constitutionally invalid as no longer having been knowingly, voluntarily or intelligently entered.

> **Supporting Facts:** Petitioner, on July 18, 1988, entered into a contractual plea agreement by agreeing to enter a plea of guilty to one count of Aggravated Murder, in exchange for a sentence of twenty years to life in prison. By automatic action of Ohio law, parole eligibility occurred after serving fourteen years and, indeed, Petitioner was reviewed by the parole board in 2002, fourteen years after starting his term.

> On August 27, 2014, the trial court, by and through a successor judge, issued Court Orders removing the parole eligibility from Petitioner's sentence. This was asserted to have been done under certain provisions of Ohio law requiring notification to the sentencing Court of a prisoner's upcoming parole hearing and providing opportunity for the sentencing judge to provide a synopsis of the facts of the case together with a recommendation to the Parole Board. None of these statutes apply to Petitioner and none of them provide for a Court Order removing parole eligibility.

15

In removing parole eligibility, the successor judge essentially resentenced Petitioner to life without parole, a sentence not available to be imposed upon a juvenile.

This pro forma resentencing was executed in absentia and sub rosa, without notice or opportunity to be heard, but rather was presented as a fait accompli.

The removal of parole eligibility and resentencing to life without parole served to modify the sentence imposed in conjunction with the contractual plea agreement and served to breach the agreement.  This renders the breached plea agreement invalid and deprived Petitioner of due process of law.

**GROUND TWO:** Petitioner was denied due process and equal protection of the law where a statute, enacted subsequent to his conviction which contains language expressly rendering it solely prospective in nature, is applied retroactively to attempt to justify a breach of his plea agreement by the pro forma resentencing and removal of parole eligibility of a successor judge, which is in violation of the Ex Post Facto Clause of the United States Constitution.

**Supporting Facts:**  During the appeal process following the one-line entry denying the Motion to Withdraw Plea, the state appellate court implied that Ohio Revised Code §5149.101 permits a successor judge to provide input and recommendations to the Parole Board in Ohio, using this, in part, to affirm the lower court, even though it was not argued in the lower court.

The statute contains express and plain language establishing that it is prospective in nature and can not be used to vest jurisdiction in a successor judge to interfere with the parole process for a prisoner incarcerated prior to its enactment, as was Petitioner. The use of this statute to attempt to excuse the successor judge's de facto resentencing in this case constitutes a violation of the Ex Post Facto Clause of the U.S. Constitution and violates Petitioners rights to Due Process and Equal Protection of the laws.

**GROUND THREE:**  Petitioner was deprived of his right to the effective assistance of counsel on direct appeal, in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution.

**Supporting Facts:**   A Motion for Leave to Withdraw Guilty Plea constitutes a direct attack upon a criminal conviction in Ohio. As such, Petitioner was duly appointed counsel at the trial court level and for the direct appeal therefrom.

16

On direct appeal, appointed appellate counsel overlooked significant and obvious issues of constitutional magnitude in favor of weaker arguments with little or no chance of success, as well as attempting to interfere with the exhaustion and fair presentment of Petitioner's Constitutional claims.

Petitioner was forced to seek leave to file a "Pro Se Supplemental Merit Brief" in an attempt to correct some of appointed appellate counsel's errors, and subsequent to the decision, an Application to Reopen the Direct Appeal on the basis of counsel's inept performance.

Appellate counsel failed to raise issues relating to the ineffectiveness of appointed counsel during the withdrawal hearing proceedings, who did not seek to reconstruct the records via Affidavits as permitted by the Rules of Court; failed to argue a violation of the separation of powers by the successor judge interfering with the executive branch in considering parole suitability, by issuing a Court Order without jurisdiction to do so, failed to argue the inherent Double Jeopardy in the successor judge de facto resentencing Petitioner (even on three cases which had expired at the time), and failed to seek the recusal of the successor judge whose conduct was in question from presiding over the hearings.

Appellate counsel further failed to argue the issues he did raise in terms of the requisite "abuse of discretion" standard, and failed to raise various arguments relating to the erroneous application of state statutes to the issues before the court.

The performance of appointed appellate counsel was so far below objective standards of reasonableness as to constitute the ineffective assistance of counsel contemplated under the Sixth and Fourteenth Amendments.

Doc. 1, pp. 6-8.

## III. Law & Analysis

### A.  Standard of review under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  In particular, the controlling AEDPA provision states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be

granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'"  *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).  "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'"  *Id*. at 599-600 (quoting *Williams*, 529 U.S. at 413).  "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous."  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  "The state court's application of clearly established law must be objectively unreasonable."  *Id.*

"A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding' only if it is shown that the state court's presumptively correct factual findings are rebutted by "clear and convincing evidence" and do not have support in the record."  *Matthews v. Ishee*, 486 F.3d 883, 889 (6 th Cir. 2007) (citing 28 U.S.C. § 2254(d) and § 2254(e)(1)).  "The presumption of correctness also applies to factual findings made by a state appellate court based on the trial record."  *Matthews*, 486 F.3d at 889 (citing *Sumner v. Mata,* 449 U.S. 539, 546-47, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981)).

18

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 131 S. Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The petitioner carries the burden of proof. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

**B.    Exhaustion and procedural default**

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").  In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state

courts.[9]  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 324-325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).   Further, a constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

Additionally, a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court.  *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006).  "Procedural barriers, such as . . . rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  *Daniels v. United States*, 532 U.S. 374, 381 (2001).  Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies where state remedies are "still available at the time of the federal petition."  *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).  In contrast, where state court remedies are no longer available, procedural default rather than exhaustion applies.  *Williams*, 460 F.3d at 806.

Procedural default may occur in two ways.  *Williams*, 460 F.3d at 806.  First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his

---

[9] In determining whether a petitioner presented his claim in such a way as to alert the state courts to its federal nature, a federal habeas court should consider whether the petitioner: (1) relied on federal cases employing constitutional analysis; (2) relied on state cases employing constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law.  *McMeans,* 228 F.3d at 681.

claim to the appropriate state court."[10] *Id.*  Second, "a petitioner may procedurally default a

claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary

appellate review procedures.'"  *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526

U.S. 838, 848 (1999)); *see also  Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D.Ohio 2003)

("Issues not presented at each and every level [of the state courts] cannot be considered in a

federal habeas corpus petition."); *see also State v. Moreland*, 50 Ohio St.3d 58, 62 (1990)(failure

to present a claim to a state court of appeals constituted a waiver).   "If, at the time of the federal

habeas petition, state law no longer allows the petitioner to raise the claim, the claim is

procedurally defaulted."  *Williams*, 460 F.3d at 806.  While the exhaustion requirement is

technically satisfied because there are no longer any state remedies available to the petitioner,

see *Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal

claims considered in the state courts constitutes a procedural default of those claims that bars

federal court review.  *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual

prejudice that resulted from the alleged violation of federal law or that there will be a

fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750.

"'[C]ause' under the cause and prejudice test must be something external to the petitioner,

something that cannot be fairly attributed to him."  *Id.* at 753.  "[T]he existence of cause for a

---

[10] In *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.*  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'"  *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

## C.    Ground One should be DENIED

In Ground One, Smith argues that the trial court breached his plea agreement which deprived him of due process of law and resulted in his plea not being knowingly, voluntarily or intelligently entered into.  Doc. 1, p. 6.  Smith presented this claim in his motion to withdraw guilty plea file on June 19, 2015.  Doc. 1, p. 6; Doc. 11-1, pp. 207-224.  After having appointed counsel for Smith and conducting an evidentiary hearing, on February 26, 2016, the trial court denied Smith's motion to withdraw guilty plea.  Doc. 11-1, p. 340.  The state court of appeals affirmed the trial court's denial of Smith's motion on March 30, 2017.  Doc. 11-1, pp. 434-444. Smith filed an appeal with the Supreme Court of Ohio from the court of appeals' March 30, 2017, decision.  Doc. 11-1, pp. 450-482.  The Supreme Court of Ohio declined to accept jurisdiction of Smith's appeal.  Doc. 11, p. 484.

The state court of appeals considered the claim that Smith raises in Ground One in its March 30, 2017, decision affirming the trial court's denial of his motion to withdraw guilty plea. In doing so the court stated:

> {¶ 10} Under Crim.R. 32.1, the trial court may set aside a judgment of conviction after it imposes sentence, and may allow the defendant to withdraw his or her plea, only "to correct a manifest injustice." *State v. Smith*, 49 Ohio St.2d 261, 264, 361 N.E.2d 1324 (1977), citing *United States v. Roland*, 318 F.2d 406 (4th Cir.1963). The individual seeking vacation of the plea bears the burden of establishing the existence of a manifest injustice. *Smith* at paragraph one of the syllabus. "A manifest injustice has been defined as a 'clear or openly unjust act,' *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208, 1998–Ohio–271, 699 N.E.2d 83,

22

meaning that a post-sentence withdrawal motion to withdraw a guilty plea is allowable only in extraordinary cases." *State v. Conner*, 8th Dist. Cuyahoga No. 98084, 2012–Ohio–3579, ¶ 5, citing *Smith* at 264. On appeal, we review a trial court's refusal to allow a postsentence motion to withdraw a guilty plea for an abuse of discretion. *Id.*, citing *State v. Xie*, 62 Ohio St.3d 521, 584 N.E.2d 715 (1992); *State v. Bankston*, 8th Dist. Cuyahoga No. 92777, 2010–Ohio–4496.

{¶ 11} Smith claims that as part of his plea agreement in 1988, the trial court would not oppose his release on parole. He claims the trial court honored the agreement in 2002, 2005, and 2012, but breached the agreement in August 2014, when it issued the following docket entry:

> The court is in receipt of the Ohio Adult Parole Authority's 08/14/2014 notice of offender's hearing before the parole board. The court imposed a sentence after due consideration of all relevant factors and opposes any reduction or modification of sentence by the Ohio parole board from that which was imposed. Clerk ordered to send a copy of this order to: Cynthia Mausser, Parole Board Chair, Adult Parole Authority, 770 West Broad Street, Columbus, Ohio 43229

{¶ 12} We find the instant case similar to this court's decision in *State v. Aquila*, 8th Dist. Cuyahoga No. 103889, 2016–Ohio–5140. In *Aquila*, the defendant filed a postsentence motion to withdraw his guilty plea based on his claim that the trial court breached the plea agreement when it opposed his parole. *Id.* at ¶ 6. Aquila appealed the trial court's denial of his motion. On appeal, we affirmed the trial court's decision, despite agreeing with Aquila that the trial court's statement to the parole board was a statement against him. *Id.* at ¶ 13. We stated:

> Aquila agreed to and was sentenced to "life in prison without the possibility of parole for 15 years." According to that sentence, parole was only a "possibility at 15 years." We would conclude otherwise if the trial court at the plea hearing had promised to not oppose parole after 15 years. However, our review of the plea hearing transcript shows the trial court did not become involved in the plea agreement and made no representation that it would recommend parole.

*Id.* at ¶ 14.

{¶ 13} Likewise, in the instant case, the record demonstrates that Smith agreed to and was sentenced to life in prison without the possibility of parole for 20 years. Based on that sentence, parole was a possibility after 20 years. Here, the plea and sentencing transcript was destroyed and the prosecuting attorney does not recall the facts of the case. As a result, other than Smith's affidavit, there is no evidence that the trial court agreed not to oppose his parole after 20 years. " 'Generally, a self-serving affidavit or statement is insufficient to demonstrate manifest injustice.' " *State v. Gibson*, 11th Dist. Portage No. 2007–P–0021, 2007–Ohio–6926, ¶ 32, quoting *State v. Wilkey*, 5th Dist. Muskingham No. CT2005–0050, 2006–Ohio–

3276, ¶ 25. *See also State v. Gray*, 11th Dist. Trumbull No. 2008–T–0114, 2009–Ohio–1925, ¶ 27.

{¶ 14} Nevertheless, even if we were to agree with Smith that the trial court promised to not oppose parole, we do not find that the journal entry issued by the trial court served as a permanent disqualifier to Smith's release from prison. The journal entry did not recommend a sentence of life without the possibility of parole. In addition, the trial court was within its authority to make a recommendation regarding Smith's parole under R.C. 2967.03. The parole board has the discretion as to whether to require Smith to remain incarcerated or release him. *Id.* Here, the parole board decided not to release Smith because of the severity of his crime and the serious infractions he committed while incarcerated. The board found that Smith's release would create either an undue risk to public safety or be inconsistent with the welfare and security of society. The board's decision does not reference the journal entry of the trial court.

\*\*\*

{¶ 16} Smith further argues that the journal entry issued by the trial court extended his sentence from life with the possibility of parole to a sentence of life without parole, in violation of his constitutional rights. However, a review of the record reflects that neither the trial court nor the parole authority has modified his prison term so that he is now subject to a sentence of life without the possibility of parole. Even after a prisoner has met the minimum eligibility requirements, parole is not guaranteed. The parole authority has wide-ranging discretion in parole matters and may refuse to grant release to an eligible offender. *State v. Clark*, 119 Ohio St.3d 239, 893 N.E.2d 462, 2008–Ohio–3748, ¶ 37, citing *Layne v. Ohio Adult Parole Auth.*, 97 Ohio St.3d 456, 2002–Ohio–6719, 780 N.E.2d 548. Thus, Smith's constitutional rights have not been violated.

{¶ 17} Based on the foregoing, Smith has not demonstrated that he has suffered a manifest injustice from the trial court's denial of his postsentence motion to withdraw his guilty plea.

*Smith*, 2017 WL 1179934, \*\* 2-4.

Since the state appellate court considered Smith's Ground One claim on the merits, in order to be entitled to federal habeas relief Smith must be able to demonstrate that the state court of appeals' determination resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).  He

must establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby*, 132 S. Ct. at 27.  Smith is unable to meet his burden.

Here, the state appellate court found that "the record demonstrates that Smith agreed to and was sentenced to life in prison without the possibility of parole for 20 years.  Based on that sentence, parole was a possibility after 20 years. *Smith*, 2017 WL 1179934, * 3.  The state appellate court found that "other than Smith's affidavit, there is no evidence that the trial court agreed not to oppose his parole after 20 years." *Smith*, 2017 WL 1179934, * 3.  Smith has not rebutted the state trial court's factual finding that there was no evidence, other than Smith's affidavit, that the trial court agreed not to oppose his parole after 20 years.  Thus, this Court is bound by this state court finding. *Matthews*, 486 F.3d at 895.  The state court of appeals explained that, "Generally, a self-serving affidavit or statement is insufficient to demonstrate manifest injustice." *Smith*, 2017 WL 1179934, * 3 (internal quotations omitted).  Smith's self-serving affidavit states that "it was *his* understanding that the Court would not oppose his release on parole, as part of the plea agreement."  Doc. 11-1, p. 323 (emphasis supplied).  Smith's understanding is not clear and convincing evidence that the trial court agreed not to oppose parole. *See e.g., Wood v. Parish*, 2019 WL 4945027, * 3 (6th Cir. May 16, 2019) (unpublished) ("[T]he state court's determination that no promise of additional credit was made to Wood at the plea hearing is a factual determination that is presumed correct on habeas review [and] [o]ther than his own reading of the plea-hearing transcript, Wood offers no evidence to support his position, let alone clear and convincing evidence that would overcome the presumption of correctness.") (internal citations omitted).  Also, there is nothing in the guilty plea journal entry that indicates there was an agreement by the trial court not to oppose parole.  Doc. 11-1, p. 10.

Further, the state court of appeals, concluded that, "even if we were to agree with Smith that the trial court promised to not oppose parole, we do not find that the journal entry issued by the trial court served as a permanent disqualifier to Smith's release from prison. The journal entry did not recommend a sentence of life without the possibility of parole." *Smith*, 2017 WL 1179934, * 3.  Smith has not rebutted this state court's factual findings with clear and convincing evidence.  Thus, we are bound by the state court's factual finding that the August 27, 2014, journal entry did not serve as a permanent disqualifier to Smith's release from prison.

Moreover, Smith has not shown that the state appellate court's decision that, even if the trial court had agreed not to oppose parole, the trial court's denial of his motion to withdraw his guilty plea did not result in a manifest injustice and there had been no violation of Smith's constitutional rights, was contrary to, or involved an unreasonable application of, clearly established law as determined by the Supreme Court of United States.  As discussed herein, Smith's contention in Ground One is that the trial court broke a promise not to oppose parole. Doc. 1, p. 6.  He fails, however, to identify clearly established law to support his claim that a breach of a plea agreement by the trial court entitles him to withdraw his guilty plea.  In *Santobello v. New York*, 404 U.S. 257 (1971), the Supreme Court found that a defendant may not be bound by a plea agreement that is subsequently breached by the prosecutor.  However, as explained by the Sixth Circuit when rejecting a federal habeas petitioner's claim that his due process rights were violated when the trial court failed to perform on its promise regarding jail time credit, which promise he alleged induced him to enter into the plea agreement, *Santobello* concerned "a breach of a plea agreement by the prosecutor, not the trial court." *Wood*, 2019 WL 4945027, * 2.  Thus, *Santobello*, "does not constitute clearly established law for purposes of this habeas claim." *Id.* (citing *Brown v. McKee*, 340 Fed. Appx. 254, 257 (6th Cir. 2009).

Further, to the extent that Smith argues that the state court of appeals incorrectly interpreted Ohio law regarding notification by the parole board regarding an upcoming parole hearing and/or the ability of a sentencing judge to provide a recommendation, it is not for this Court to review the state court's interpretation of its own laws.  *See Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S. Ct. 602, 604, 163 L. Ed. 2d 407 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986) ("A federal court must accept a state court's interpretation of that state's statutes and rules of practice.").  Moreover, "federal habeas corpus relief does not lie for errors of state law."  *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S. Ct. 475, 480, 116 L. Ed. 2d 385 (1991).  Thus, any claim by Smith premised on violations of state law are not cognizable on federal habeas review since "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle*, 502 U.S. at 68.

For the reasons explained herein, the undersigned finds that Smith has failed to demonstrate that the state appellate court's decision affirming the trial court's denial of his motion to withdraw his guilty plea resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).  Accordingly, the undersigned recommends that the Court DENY Ground One.

      **D.**      **Ground Two should be DISMISSED and/or DENIED**

In Ground Two, Smith argues that the appellate court's use of Ohio parole authority statutes "to attempt to excuse the successor judge's de facto resentencing in this case constitutes a violation of the Ex Post Facto Clause of the U.S. Constitution and violates the Petitioners rights to Due Process and Equal Protection of the laws."  Doc. 1, p. 7.

Respondent argues that any due process claim that Smith seeks to raise in Ground Two is duplicative of the claim raised in Ground One.   Doc. 11, p. 28.  The undersigned agrees and, for the reasons explained above, recommends dismissal of any due process claim in Ground Two.

With respect to the alleged violations of the Ex Post Facto Clause and Equal Protection Clause, Respondent argues that the claims were not fairly presented to the state courts and therefore should be dismissed as procedurally defaulted.  Doc. 11, pp. 28-29.  Petitioner states that this issue did not arise until the state court of appeals issued its decision on March 30, 2017, and he contends that he timely presented the issue in his notice of appeal filed in the Supreme Court of Ohio in Case No. 17-0651.  Doc. 1, p. 7; Doc. 11-1, pp. 450-482.  However, in his memorandum in support of jurisdiction, Smith did not fairly present Equal Protection or Ex Post Facto constitutional claims.  Doc. 11-1, pp. 453-482.  Even if Smith had fairly presented these claims to the state courts and not procedurally defaulted them, he has not shown that he is entitled to federal habeas relief.  In reaching its decision affirming the trial court's denial of Smith's motion to withdraw, the state appellate interpreted state parole authority statutes, explaining that "the trial court was within its authority to make a recommendation regarding Smith's parole under R.C. 2967.03."  *Smith*, 2017 WL 1179934, * 3.  As explained above, it is not for this Court to review a state court's interpretation of its own laws.  *See Bradshaw*, 546 U.S. at 76; *Duffel*, 785 F.2d at 133.  And, "federal habeas corpus relief does not lie for errors of

state law." *Estelle*, 502 U.S. at 67.  Thus, to the extent that Smith's claims in Ground Two rest

on alleged errors of state law, his claims are not cognizable on federal habeas review.

Additionally, to the extent that he claims a violation of federal constitutional law, Smith

has not shown that the decision was contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States.  The

Ex Post Facto Clause is "aimed at laws that 'retroactively alter the definition of crimes or

increase the punishment for criminal acts.'" *California Dept. of Corr. v. Morales*, 514 U.S. 499,

504 (1995) (quoting *Collins v. Youngblood,* 497 U.S. 37, 43, 110 S.Ct. 2715, 2719, 111 L.Ed.2d

30 (1990)).  The court of appeals addressed Smith's claim that his sentence was modified

retroactively resulting in removal of parole eligibility for parole, stating:

> {¶ 16} Smith further argues that the journal entry issued by the trial court extended
> his sentence from life with the possibility of parole to a sentence of life without
> parole, in violation of his constitutional rights. However, *a review of the record
> reflects that neither the trial court nor the parole authority has modified his prison
> term so that he is now subject to a sentence of life without the possibility of parole.*
> Even after a prisoner has met the minimum eligibility requirements, parole is not
> guaranteed. The parole authority has wide-ranging discretion in parole matters and
> may refuse to grant release to an eligible offender. *State v. Clark*, 119 Ohio St.3d
> 239, 893 N.E.2d 462, 2008–Ohio–3748, ¶ 37, citing *Layne v. Ohio Adult Parole
> Auth.*, 97 Ohio St.3d 456, 2002–Ohio–6719, 780 N.E.2d 548. Thus, Smith's
> constitutional rights have not been violated.

*Smith*, 2017 WL 1179934, * 4 (emphasis supplied).

Smith has not rebutted the state trial court's factual finding that "neither the trial court

nor the parole authority has modified his prison term so that he is now subject to a sentence of

life without the possibility of parole." *Id.*  Nor has Smith shown that the state court of appeals'

determination resulted in a determination that was contrary to, or involved an unreasonable

application of, clearly established Federal law, *as determined by the Supreme Court of the United

States.*  28 U.S.C. § 2254(d)(1) (emphasis supplied).  Smith argues only that the state court of

29

appeals' decision was contrary to a decision reached by the *Third Circuit Court of Appeals*.  Doc. 13, pp. 5-6 (citing *Mickens-Thomas v. Vaughn*, 321 F.3d 374 (3rd Cir. 2003)).

For the reasons discussed herein, the undersigned finds that the claims raised in Ground Two were not all fairly presented in state court and/or the claims in Ground Two are without merit.  Accordingly, the undersigned recommends that the Court DISMISS and/or DENY Ground Two.

### E.    Ground Three should be DISMISSED

In Ground Three, Smith argues he was deprived of his right to effective assistance of counsel during his appeal from the trial court's denial of his motion to withdraw guilty plea. Doc. 1, pp. 7-8.  He contends that counsel who was appointed to represent him in his appeal from the trial court's denial of his motion to withdraw "overlooked significant and obvious issues of constitutional magnitude in favor of weaker arguments with little or no chance of success[.]" Doc. 1, p. 7.  As a result, Smith asserts that he was required to seek leave to file a pro se supplemental brief to correct some of his appointed counsel's errors.  *Id.*  Further, he asserts that he subsequently filed an application to reopen his direct appeal on the basis of his appellate counsel's errors.  Doc. 1, pp. 7-8.

Respondent argues that Ground Three is not cognizable on federal habeas review because there was no direct review in Smith's case and his motion to withdraw his guilty plea constitutes collateral review.  Doc. 11, pp. 30-32.

The constitutional "right to appointed counsel extends to the first appeal of right and no further."  *Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). Where a defendant has "no constitutional right to counsel, he [cannot] be deprived of the effective assistance of counsel[.]"  *Wainwright v. Torna,* 455 U.S. 586, 587-588 (1982).  Thus,

there can be a constitutional claim of ineffective assistance of counsel only at a stage of the proceedings when there is a right to counsel under the Sixth Amendment.  *Smith v. State of Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 433 (6th Cir. 2006) (citing *Coleman,* 501 U.S. 722, 752, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)).

In *State v. Bush,* 96 Ohio St.3d 235, 773 N.E.2d 522, 526 (Ohio 2002), the Supreme Court of Ohio "announced that Rule 32.1 motions were part of the direct review process." *Phillips v. Wilson*, 2007 WL 2825719, at *4, n. 3 (N.D. Ohio Sept. 25, 2007).  However, "[t]here is no statutory right to counsel in [Ohio] Crim. R. 32.1 motions ..." *Id.* (citing *State v. Meadows,* 2006 WL 1450643 at *2, 2006 -Ohio-2622 (Ohio App. 6 Dist.), *appeal not allowed,* 111 Ohio St.3d 1415, 854 N.E.2d 1093 (Table 2006); *State v. McNeal,* 2004 WL 35762, 2004-Ohio-50 (Ohio App. 8 Dist.), *appeal not allowed,* 102 Ohio St.3d 1483, 810 N.E.2d 767 (Table 2004)).  And, "Ohio Courts have not yet granted greater rights than those in the federal constitution, and have generally held that there is no absolute right to appointed counsel in pursuing a postsentence motion to withdraw a guilty plea." *Id.*  Thus, while state of Ohio appellate decisions have "acknowledge[d] *State v. Bush's* holding that Ohio Crim. R. 32.1 motions are part of the original criminal action and are not collateral proceedings, . . . [they] [have] refuse[d] to find a right to counsel in those proceedings[.]"  *Phillips*, 2007 WL 2825719, at *4, n. 3.

Since there is no right to counsel in a motion to withdraw guilty plea proceeding, Smith's claim that he was denied a constitutional right to effective assistance of counsel is not cognizable on federal habeas review.  Accordingly, the undersigned recommends that the Court DISMISS Ground Three.

**IV**. **Recommendation**

For the reasons stated above, the undersigned recommends that the Court DISMISS

and/or DENY Smith's Petition (Doc. 1).  The Court should DENY Ground One; DISMISS

and/or DENY Ground Two; and DISMISS Ground Three.

Dated: April 7, 2020

*/s/ Kathleen B. Burke*
Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of
Courts within fourteen (14) days after the party objecting has been served with a copy of this
Report and Recommendation.  Failure to file objections within the specified time may waive the
right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir.
1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).